UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| PRIME HEALTH SERVICES, INC., | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) NO. 3:16-cv-00034 |
|  | ) JUDGE CRENSHAW |
| CAPITAL BANK, N.A., and CAPITAL | ) |
| BANK FINANCIAL CORP., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Capital Bank, N.A. and Capital Bank Financial Corporation filed a Motion to Dismiss ("Motion") (Doc. No. 36) the Complaint for failure to state a claim upon which relief can be granted. For the reasons that follow, the Motion will be **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

This case arises from the embezzlement of $5.3 million dollars from Prime Health Services, Inc. ("Prime") by its acting Chief Financial Officer ("CFO"), Steven Rawlins ("Rawlins"). (Doc. No. 6, at ¶¶ 1–2.) The central allegation is that Kenneth Goddard ("Goddard"), former Senior Vice President at Capital Bank, N.A. ("Capital Bank"), negligently allowed Rawlins to embezzle funds from Prime's account with Capital Bank to his personal account. (Id.) Rawlins was convicted of embezzlement in federal court for his actions against Prime. (Doc. No. 36, at 1 (citing United States v. Rawlins, 1:15-cr-00377-AJN, Doc. No. 89, (S.D.N.Y. Nov. 16, 2015)).) Prime seeks damages from Capital Bank for allowing Rawlins' embezzlement by negligently supervising and retaining Goddard, who aided and abetted

1

Rawlins' breach of fiduciary duty to Prime. (Doc. No. 6, at ¶ 1.) Prime claims Capital Bank Financial Corporation ("CBF") is vicariously liable for the negligent supervision and negligent retention of Goddard by Capital Bank because it shares employees, officers and directors with its subsidiary Capital Bank. (Id. at ¶¶ 86–87, 97–98.)

## II. FACTUAL ALLEGATIONS

According to Prime, Rawlins developed an embezzlement scheme involving Prime funds held by Capital Bank. (Doc. No. 6, at ¶ 23.) With Prime's approval and authority through Goddard, Rawlins applied for and received a term loan and line of credit from Capital Bank on behalf of Prime. (Id. at ¶ 25.) The loan and line of credit were formalized and executed through a Loan and Security Agreement on January 13, 2013. (Id. at ¶ 31.) Rawlins was Prime's primary contact with Capital Bank. (Id. at ¶ 25.) Pursuant to the Loan and Security Agreement, Prime was required to provide Capital Bank with monthly financial data and financial statements, which it did not do, (id. at ¶¶ 50–52), and Capital Bank did not question. (Id. at ¶¶ 53–55)

According to Prime, Capital Bank approved the loan and line of credit "in contravention" of its internal policies because it did not receive tax returns, income statements, balance sheets and other documents typically relied upon by Capital Bank before approving Prime's loan. (Id. at ¶ 29.) When Capital Bank discovered its failure, Goddard was directed to obtain the missing documentation. (Id. at ¶¶ 33–34.) In an email to Prime's CEO, requesting this documentation, Goddard admitted that Capital Bank had been "negligent" in closing the loan and line of credit absent proper documentation. (Id. at ¶ 35.) Goddard subsequently received the documentation but neither he nor anyone else at Capital Bank reviewed it. (Id. at ¶ 38.) Prime alleges that these

2

actions constituted a violation of both the Loan and Security Agreement and Capital Bank's internal policies and procedures. (Id. at ¶¶ 2, 29, 38–39, 42, 46, 50–7.)

Rawlins induced Capital Bank to wire Prime funds into his personal accounts over 180 times. (Id. at ¶¶ 41, 44.) Additionally, Rawlins signed checks on Prime's behalf that transferred funds from Prime's Capital Bank account into accounts of Rawlins' shell companies over 80 times. (Id. at ¶ 41.) These wires and checks were reviewed and approved by Goddard. (Id.) Capital Bank questioned one of the suspicious transactions made by Rawlins in 2012, but, nevertheless, continued to approve the transfers. (Id. at ¶ 44.) Prime claims that these actions violated both Capital Bank's internal policies and procedures and "standard banking industry practices requiring exercise of ordinary duty of care." (Id. at ¶ 42.)

In March 2013, Capital Bank informed Prime's CEO that it had terminated Goddard for not collecting the appropriate financial reports and documents from Prime. (Id. at ¶¶ 68–69.) Capital Bank initiated an investigation of the Prime account and discovered the extent of Rawlins' embezzlement. (Id. at ¶ 75.) In the three months it allegedly took Capital Bank to fully investigate Rawlins' fraud, he transferred an additional $780,000 of Prime's funds into accounts he owned or controlled. (Id. at ¶ 71.)

### III. LEGAL STANDARD

Under Rule 12(b)(6), the Court must take all the factual allegations in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Threadbare recitals of the elements of a cause of action, supported by mere

3

conclusory statements, do not suffice. Id.; see also Warren v. Warrior Gold Capital, LLC, 126 F. Supp. 3d 988 (E.D. Tenn. 2015) (denying defendant's motion to dismiss plaintiff's negligent training and supervision claim because the complaint presented enough facts to state a plausible claim for relief).

IV. ANALYSIS

A. Negligent Supervision and Retention

The crux of Prime's negligent supervision and retention claims (Counts One and Two) is that Goddard's negligence (and by extension, Capital Bank's) facilitated Rawlins' embezzlement to the detriment of Prime. (Doc. No. 6, at ¶ 2.) Prime also alleges that CBF, a subsidiary of Capital Bank, is vicariously liable for Capital Bank's alleged negligent supervision and retention. (Id. at ¶¶ 86–87, 97–98.)

"A plaintiff may recover in Tennessee for negligent hiring, supervision or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job." Warren, 126 F. Supp.3d at 998 (citing Doe v. Catholic Bishop for Diocese of Memphis, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008)); see also Hays v. Patton-Tully Transp. Co., 844 F. Supp. 1221, 1222 (W.D. Tenn. 1993) ("The usual context for a claim of negligent supervision by an employer of its employees … is where the wrongful conduct of an employee injures an outside third party."). This "requires the plaintiff to identify the employee and explain what the employee did that negligently injured the plaintiff." Thompson v. Bank of Am., N.A., 773 F.3d 741, 755 (6th Cir. 2014). In Thompson, the Sixth Circuit affirmed the district court's dismissal of the plaintiff's negligent supervision and retention claims because the plaintiff failed to identify specific negligent behavior by employees. Id.

Unlike the plaintiff in Thompson, Prime has identified the employee—Goddard—and explained that he negligently injured it by failing to follow (1) Capital Bank's policies and procedures, and (2) standard banking industry practices. (Id. at 10–11.) Prime contends that Goddard and Capital Bank owed it, as both a borrower and a depositor, the duty of ordinary care. (Doc. No. 43, at 12.) Defendants assert that negligent supervision and retention require tortious conduct by an employee acting outside the scope of his employment. (Doc. No. 36, at 5–8.) Accordingly, Defendants move for dismissal by claiming, essentially, that the acts that injured Prime were neither tortious nor outside the scope of Goddard's employment at Capital Bank. (Id. at 8.)

The Tennessee Court of Appeals recently clarified the distinction and interplay between negligent retention and supervision claims and claims asserted against an employer as a result of an employee's activities within the scope of his employment. Jones v. Windham, No. W2015-00973-COA-R10-CV, 2016 WL 943722 (Tenn. Ct. App. Nov. 18, 2015) vac'd on other grounds (Tenn. Aug. 19, 2016). In Jones, the plaintiff sued a driver for negligence and the driver's employer for vicarious liability, negligence per se, and negligent hiring and retention. Id. at *1. The employer filed a motion for summary judgment, which was granted, claiming that it was improper to proceed against them on direct negligence claims when they had already admitted to vicarious liability. Id. The court of appeals reversed and remanded it because vicarious liability represents an independent claim separate from other theories asserted against an employer holding that an employer's admission of vicarious liability does not preclude claims against the employer for its own negligence. Id. at *5 (citing Harper v. Churn, 83 S.W.3d. 142, 146–48 (Tenn. Ct. App. 2002)). The court of appeals distinguished between vicarious liability (or respondeat superior claims) in which, as Defendants assert here (Doc. No. 36, at 8), an

5

employer's liability is dependent on the conduct of its employee, and direct negligence claims in which an employer is liable for its own negligent conduct with respect to its employees. Jones, 2016 WL 943722, at *4–5.

Given this distinction between vicarious liability and direct liability claims against an employer, the Court finds that Prime has stated a plausible claim against Capital Bank for negligent supervision and retention arising from Goddard's alleged failure to exercise ordinary care and to follow standard banking practices and procedures. Id. Here, Prime alleges that Capital Bank is vicariously liable for Goddard's omissions during the course of his authorized employment with Capital Bank. Prime contends that Rawlins' embezzlement would not have occurred but for Goddard's omissions in the scope of his employment with Capital Bank. Although causation must still be established, on a motion to dismiss the Court must assume all allegations in a complaint are true. Ashcroft, 556 U.S. at 677. If Goddard's omissions did cause Rawlins' embezzlement, a plausible claim for relief is established.

Defendants also move for dismissal because Prime cannot establish the elements of a negligence claim. (Doc. No. 36. at 11–21.) To sustain a negligence claim, a plaintiff must first establish that the defendant owed plaintiff a duty of care. Burroughs v. Magee, 118 S.W.3d 323, 327–28 (Tenn. 2003). The scope of duty is a question of law for the court to resolve. Blair v. Campbell, 924 S.W.2d 75, 78 (Tenn. 1996) (citing Carson v. Headrick, 900 S.W.2d 685, 690 (Tenn. 1995)). Defendants assert that Prime cannot establish that Capital Bank owed it any duty.[1] (Id. at 11–19.) Prime explicitly alleges that Capital Bank's internal policies and

---

[1] Defendants assert that, to the extent that Prime bases its claims on the Loan and Security Agreement, such claims must be pled as a breach of contract. (Doc. No. 36, at 19.) The Court agrees that if Prime seeks to hold Capital Bank liable on the basis of their Loan and Security Agreement, it must plead contract claims. See Suzich v. Booker, No. W2011-02583-COA-R3-CV, 2012 WL 3055991, at *4 (Tenn. Ct. App. Jul. 27, 2012) (quoting Lomax v. Headley Homes, No. 02A01-9607-CH-00163, 1997 WL 269432, at *2–3 (Tenn. Ct. App. May 22, 1997) ("[A]

procedures—such as "documents [from Prime] that Capital Bank requires in order to analyze the approval of the loan" (Doc. No. 6, at ¶ 29)—created duties with respect to the line of credit, loan and transfers. (Id. at ¶¶ 30, 33–36, 38, 42, 45–47.) Prime also alleges that Capital Bank's duties stem from "standard banking practices reflecting a duty of ordinary care." (Id. at ¶ 42.) Defendants do not deny the existence of internal policies and procedures or standard banking practices and admit that Capital Bank owed Prime (as a depositor) a duty of ordinary care (Doc. No. 36, at 12–13.)

Defendants claim that as a "general rule," a lender owes a borrower no duties. (Id. at 11–12.) Defendants, however, concede that this "general rule" is only established by non-binding cases outside this jurisdiction and has not been ruled upon by Tennessee courts. (Id.) Defendants further concede that a bank does owe a depositor the duty of ordinary care, although they attempt to limit the scope of that duty by claiming that it did not include an affirmative duty to aid or protect Prime from the checks and wire transfers effectuated by Rawlins. (Id. at 16–18.) Tennessee courts have held that a bank has no duty to administer an account or supervise its administration and may pay checks regularly drawn on an account on the presumption that the depositor's fiduciary who draws them is acting honestly and properly administering funds, unless circumstances are such as to put the bank on notice that the fiduciary is misappropriating or intends to misappropriate those funds. Chambers v. First Trust and Sav. Bank, 030A1-9108-CH00293, 1992 WL 40191, *3 (Tenn. App. Mar. 4, 1992) (citing Hartford Accident & Indemnity Co. v. Farmer's Nat'l Bank, 149 S.W.2d 473 (Tenn. App. 1940)). However, what suffices to put a bank on notice depends on the particular facts and circumstances of the case. Id.

---

lender's duty in this situation is governed by the provisions of the … loan agreement between the lender and the borrower.")).

Indeed, Tennessee courts have held that a bank's failure to adhere to its own internal procedures "is indicative of a failure to act in accordance with reasonable commercial standards." Glazer v. First Am. Nat't Bank, 02A01-9308-CH-00185, 1995 WL 316235, *6 (Tenn. App. May 25, 1995) (citing Inventory Locator Serv. v. Dunn, 776 S.W.2d 523, 527 (Tenn. App. 1989)) rev'd on other grounds.

Here, Prime alleges that Capital Bank breached its duty to Prime by failing to adhere to (1) its own internal policies and procedures and (2) standard banking practices reflecting a duty of ordinary care. (Doc. No. 6, at ¶¶ 6, 42–49.) To rebut these allegations, Capital Bank has offered neither binding case law nor factual content regarding its policies and procedures or standard banking practices. (Doc. No. 36, at 11–18.) The Court must "assume [the] veracity" of Prime's well-pleaded factual allegations. Ashcroft, 556 U.S. at 679. Therefore, the Court accepts as true the existence of (1) Capital Bank; internal policies and procedures and (2) standard banking practices reflecting a duty of ordinary care. The Complaint pleads factual content that allows the Court to draw a reasonable inference that Defendants owed some legal duties to Prime, and the Court cannot, on a motion under Fed R. Civ. P. 12(b)(6), dismiss this claim. See Ashcroft, 556 U.S. at 677. It is not necessary for the Court to rule on the breach and causation elements of Goddard's alleged underlying tort or Capital Bank's negligent supervision or retention.

**B. Aiding and Abetting Breach of Fiduciary Duty**

Prime alleges that Capital Bank aided and abetted Rawlins' breach of his fiduciary duty to Prime. (Doc. No. 6, at ¶¶ 99–105.) Capital Bank moves for dismissal because (1) Prime fails to allege that Capital Bank knew that Rawlins was breaching his fiduciary duty to Prime and (2) Capital Bank did not provide substantial assistance to Rawlins. (Doc. No. 36, at 22–23.)

Tennessee follows the Restatement of Torts § 876(b) on the standard for aiding and abetting, requiring that the plaintiff allege that "the defendant knew that his companions' conduct constituted a breach of duty, and that he gave substantial assistance or encouragement to them in their acts." Cecil v. Hardin, 575 S.W.2d 268, 272 (Tenn. 1978) (citing Restatement (First) of Torts § 876(b) (Am. Law. Inst. 1939)). "Other courts ... have found that, as a matter of law, a bank's provision of flexible banking services and a line of credit are insufficient to constitute substantial assistance, even if those actions have the effect of enabling a fiduciary to misappropriate funds in breach of his or her duty." Lawyers Title Ins. Corp. v. United Am. Bank of Memphis, 21 F. Supp. 2d 785, 799 (W.D. Tenn. 1998) (citations omitted). However, certain actions taken by a bank, "done with the knowledge that the funds were misappropriated," could be considered substantial assistance for the purposes of aiding and abetting breach of fiduciary duty. Id. at 801.

Prime alleges that Capital Bank substantially assisted Rawlins in the breach of his fiduciary duty by failing to supervise and terminate Goddard, which facilitated Rawlins' embezzlement of Prime's monies. (Doc. No. 6, at ¶¶ 102–03.) Prime argues that it sufficiently pled that Capital Bank was aware of the breach of fiduciary duty by Rawlins. (Doc. No. 43, at 21–22.) For example, the Complaint alleges the following:

> Capital Bank knew of at least one suspicious transaction . . . and had its compliance department flag the transaction in question. Defendants were aware that Mr. Rawlins inflated capitalized software asset on Plaintiff's financial statements and provided false financial data to the bank [in the loan approval process].

(Doc. No. 6, at ¶¶ 44, 58–59.) However, these allegations do not "alone adequately plead that Defendants had actual knowledge of Rawlins' scheme." (Doc. No. 43, at 22.) They merely allege that the wire transfers and reported assets were "suspicious." (Id.) Prime offers nothing

more than conclusory statements to establish that suspicions are analogous to "knowledge that the funds were misappropriated" by Rawlins in breach of his fiduciary duty to Prime and furtherance of his embezzlement scheme. Lawyers Title Ins. Corp, 21 F. Supp. 2d at 801. Nor does Prime state that a failure to investigate suspicions constitutes the "substantial assistance or encouragement" necessary to sustain a claim of aiding and abetting Rawlins' embezzlement. Cecil v. Hardin, 575 S.W.2d at 272. For these reasons, Prime fails to state a claim for aiding and abetting breach of fiduciary duty and the third cause of action will be dismissed.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (Doc. No. 36) will be **DENIED** as to Prime's first and second causes of action, but will be **GRANTED** as to Prime's third cause of action.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT COURT